CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

DEC 21 2005

JOHN F. CORGORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| DATANATIONAL, INC., <br><br> *Plaintiff,* <br><br> v. <br><br> YELLOW BOOK SALES AND DISTRIBUTION CO., INC., MICHAEL FORNEY, THOMAS BALL, STEVEN MERCHANT, CARY BUTLER, KAREN COULTER, AND ERIC GANNON, <br><br> *Defendants.* | CIVIL ACTION NO. 3:05-CV-00035 <br><br><br> MEMORANDUM OPINION <br><br><br> JUDGE NORMAN K. MOON |

Before the Court are Defendants' Motion to Stay or Dismiss, pursuant to the Federal Arbitration Act, and a Motion to Strike Jury Demand/Objection to the Pretrial Order. For the reasons set forth below, the Court will grant the Motion to Stay in Part and deny it in part, and grant the Motion to Strike Jury Demand/Objection to the Pretrial Order.

## BACKGROUND

Plaintiff DataNational publishes a "yellow pages" telephone directory, which lists phone numbers, addresses, and advertising information for businesses in different locations. Defendant Yellow Book publishes a competing directory. Each of the individual defendants originally worked for, and had an employment agreement (collectively, the "Agreements") with DataNational in Virginia. Each Agreement contained certain covenants, including a non-compete clause in which the signatory agreed not to compete with DataNational or solicit

DataNational's clients or employees for one year after terminating their employment with the company, and a provision waiving the right to a jury trial. Each individual has allegedly left the company and, less than a year afterwards, begun working for Yellow Book.

DataNational claims that Yellow Book has instructed its sales force, including DataNational's former employees, to tell potential customers that DataNational is going out of business and will no longer be publishing a telephone directory. Further, Plaintiff alleges that Yellow Book has misrepresented the cost of advertising with DataNational. As a result, several of DataNational's current customers have allegedly canceled existing contracts, reduced the amount of advertisements purchased, or refused to sign new contracts. Plaintiff also claims that potential customers have cited the allegedly false information that Yellow Book provided as a reason for declining to purchase advertising with DataNational.

DataNational has charged Defendants with false advertising under both state and federal law, defamation, common law conspiracy, tortious interference with a business expectancy, and breach of employment agreements. Defendants have brought this Motion to Stay or Dismiss pursuant to an arbitration clause in the individual Defendants' Agreements. The Motion to Strike Jury Demand/Objection to the Pretrial Order is based upon the waiver of jury trial rights also contained in the Agreements.

## ANALYSIS

*1. Motion to Stay or Dismiss*

Defendants seek to have all counts against the individual Defendants arbitrated or stayed pending arbitration, pursuant to the arbitration clause in each individual's Agreement. Federal policy, as embodied in the Federal Arbitration Act, 9 U.S.C. § 1, favors arbitration. Therefore,

2

"any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). Furthermore, "the reach of an arbitration clause is not restricted to those causes of action brought under the contract containing the clause, unless the parties draft a clause so restricted in scope." *Drews Distributing, Inc. v. Silicon Gaming, Inc.*, 245 F.3d 347, 350 (4th Cir. 2001). Arbitration should be compelled unless "it may be said with positive assurance that arbitration clause is not susceptible of an interpretation that covers the settled dispute." *McAllister Bros., Inc., v. A & S Transp. Co.*, 621 F.2d 519 (2d Cir. 1980) (internal quotations and citations omitted).

DataNational's Agreements contained a broad arbitration clause, encompassing:

> "any dispute or controversy or claim arising out of, involving, affecting or related to this Agreement, or breach of this Agreement, or arising out of, involving, affecting or related in any way to Employee's employment or the termination of Employee's employment, including not limited to disputes, controversies or claims arising out of or related to the actions of the Company's other employees, under Federal, State and/or local law..." Compl. Exs. A–F, at 1, ¶ 5.

Under established Fourth Circuit precedent, if any claim has a "significant relationship" to the contract at issue, that claim can be said to arise out of or relate to the contract. *American Recovery Corp. v. Computerized Thermal Imaging*, 96 F.3d 88, 93 (4th Cir. 1996).

DataNational concedes that Counts VIII through XIII of the Complaint, each of which assert breach of employment agreement claims against an individual Defendant, should be referred to arbitration. Pl.'s Mem. in Opp'n at 4.

DataNational also concedes that Counts IV, V, and VII (statutory conspiracy, common law conspiracy, and tortious interference with contract claims, respectively) have "facts intertwined with matters that could be impacted by the Arbitration of the Employment

3

Agreement..." *Id.* Nonetheless, DataNational argues that the conspiracy charges also involve elements unrelated to the Agreements, and thus should not be arbitrated. Plaintiff agrees, however, that the claims could be stayed until the conclusion of arbitration. *Id.* at 4–5.

In each of Counts IV, V, and VII, DataNational has to some extent relied on the Agreements. In Count VII, tortious interference with contract, DataNational alleges that Defendants have interfered with the Agreements and with advertising contracts that DataNational had with other clients. In the conspiracy claims, Plaintiff alleges that Defendants have conspired to breach the Agreements and to disseminate false information. The Agreements will play a substantial role in the resolution of these claims, and DataNational relies on the Agreements to establish the claims in the Complaint. *See American Recovery*, 96 F.3d at 94. As a result, the Court finds that the claims bear a "significant relationship" to the Employment Agreements; therefore, the Court will also order Counts IV, V, and VIII to arbitration as to the individual Defendants. *Id.* at 93.

Plaintiff opposes arbitration for Counts I, II, III, and VI. Count I claims that Defendants violated the Lanham Act against false advertising. Count II is a defamation claim. Count III claims that Defendants violated state law against false advertising. Count VI claims that Defendants committed tortious interference with a business expectancy, in reference to clients that have left DataNational as a result of Defendants' actions. The terms and existence of the Agreements have no relationship to the above counts. Furthermore, Plaintiff does not rely on the Agreements to establish these claims, nor will the finder of fact have to rely on or refer to the Agreements to resolve these claims. Therefore, the Agreements do not have a significant relationship to counts I, II, III, and VI, and the Court will not order them to arbitration. *See Long*

4

*v. Silver*, 248 F.3d 309, 318 (4th Cir. 2001).

The next issue is whether the Court, after compelling arbitration in some claims, should stay all other proceedings. This decision is within the Court's discretion. *See American Recovery*, 96 F.3d at 97. When there are questions of fact common to all claims that are likely to be settled during arbitration, "considerations of judicial economy and avoidance of confusion and possible inconsistent results" may suggest that all proceedings should be stayed until the arbitration is completed. *American Home Assurance Co. v. Vecco Concrete Construction Co., Inc. of Virginia*, 629 F.2d 961, 964 (4th Cir. 1980). In this case, all of the claims arise from the same factual allegations, and the arbitration will "at least partially determine the issues which form the basis of the claim against that non-arbitrating defendant." *Hikers Indus. Inc., v. Williams Stuart Indus. (Far East) Ltd.*, 640 F. Supp. 175, 178 (S.D.N.Y. 1986). The arbitrator will have to determine the extent of the individual Defendants' actions in violating the Agreements, and these facts will likely affect the resolution of the counts reserved for trial. Therefore, the Court will stay the remaining claims until the arbitration has ended. Of course, Counsel may petition the Court at any time to end the stay, if the arbitration lasts long enough to cause a party irreparable harm.

2. *Motion to Strike Jury Demand/Objection to the Pretrial Order*

Defendants also seek to strike Plaintiff's jury demand as to the individual Defendants, and object to the Pretrial Order, which set this case for a trial by jury, pursuant to a waiver present in the Agreements. The waiver states:

> "Employee and the Company each hereby agree to waive our respective rights to trial by jury in any lawsuit or cause of action between Employee and the Company and/or the Company's other employees." Compl. Exs. A–F, at 2, ¶ 6.

5

The Court finds that, as a drafter and signatory of these Agreements, Plaintiff knowingly and voluntarily waived its rights to a jury trial as to any cause of action between itself and individual Defendants, each of whom signed an Agreement containing the clause. *See Leasing Serv. Corp. v. Crane*, 804 F.2d 828, 833 (4th Cir. 1986). Nonetheless, the Court reserves the right to try any or all issues using an advisory jury or to order a jury trial under the Federal Rules of Civil Procedure once the arbitration has concluded. Fed. R. Civ. P. 39.

## CONCLUSION

In summary, the Court will refer counts IV, V, and VII–XIII to arbitration as to the individual Defendants. All counts against Defendant Yellow Book, as well as counts I, II, III, and VI against all Defendants, shall be stayed pending the resolution of arbitration. Furthermore, the Court will grant the Motion to Strike Jury Demand/Objection to the Pretrial Order.

An appropriate Order shall issue this day.

ENTERED: _____
United States District Judge

Date: December 21, 2005

6